[Cite as *State v. Wilburn*, 2021-Ohio-578.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO, :

    Plaintiff-Appellee, :

                                    No. 109507

v. :

RONALD WILBURN, :

    Defendant-Appellant. :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 4, 2021

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-19-644827-A and CR-19-644828-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Amanda Hall, Assistant Prosecuting Attorney, *for appellee.*

Edward F. Borkowski, Jr., *for appellant.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendant-appellant Ronald Wilburn appeals his sentence, contending that the law under which he was sentenced — the Reagan Tokes Law — is unconstitutional. Finding no merit to the appeal, we affirm.

## I. Background and Procedural History

{¶ 2} Wilburn was indicted in Cuyahoga C.P. No. CR-19-644827 on one count of burglary in violation of R.C. 2911.12(A)(2), and one count of theft in violation of R.C. 2913.02(A)(1). He was indicted in Cuyahoga C.P. No. CR-19-644828 on two counts of felonious assault in violation of R.C. 2903.11(A)(1); two counts of felonious assault in violation of R.C. 2903.11(A)(2); one count of domestic violence in violation of R.C. 2919.25(A); and one count of endangering children in violation of R.C. 2919.22(A).

{¶ 3} Wilburn entered into a plea agreement with the state and pleaded guilty in CR-19-644827 to burglary, a second-degree felony, and to an amended count of aggravated assault, a fourth-degree felony, in CR-19-644828. The remaining counts in both cases were nolled.

{¶ 4} The trial court sentenced Wilburn in CR-19-644827 to a minimum term of two years in prison and a maximum term of three years, to be served concurrent with 12 months' incarceration in CR-19-644828. The trial court overruled defense counsel's objection that the Reagan Tokes Law, under which Wilburn was sentenced in CR-19-644827, was unconstitutional.[1] This appeal followed.

---

[1] The Reagan Tokes Law (S.B. 201) applies to qualifying first- and second-degree felonies. Thus, Wilburn's misdemeanor offense in CR-19-644828 was not a qualifying offense under the law.

## II. Law and Analysis

{¶ 5} In his single assignment of error, Wilburn contends that the indefinite sentencing scheme established by the Reagan Tokes Law is unconstitutional because it violates constitutional guarantees of separation of powers and due process.[2] Thus, he asserts that his sentence in CR-19-644827 should be vacated, and the matter remanded for a new sentencing hearing under the pre-S.B. 201 statutes.

{¶ 6} The Reagan Tokes Law was enacted in 2018 and became effective on March 22, 2019. *See* R.C. 2901.011. Under the law, qualifying first- and second-degree felonies committed on or after March 22, 2019, are subject to the imposition of indefinite sentences. The law specifies that these terms will consist of a minimum term selected by the sentencing judge from a range of terms set forth in R.C. 2929.14(A) and a maximum term determined by formulas set forth in R.C. 2929.144.

{¶ 7} The law establishes a presumptive release date at the end of the minimum term. R.C. 2967.271(B). The Ohio Department of Rehabilitation and Correction ("ODRC") may rebut that presumption, however, and keep the offender in prison for an additional period not to exceed the maximum term imposed by the trial judge. R.C. 2967.271(C). In order to rebut the presumption, the ODRC must conduct a hearing and determine whether one or more of the following factors apply:

> (1) (a) During the offender's incarceration, the offender committed institutional rule infractions that involved compromising the

---

[2] Wilburn does not specify whether his challenges are based on the Ohio Constitution, the United States Constitution, or both.

security of a state correctional institution, compromising the safety of the staff of a state correctional institution or its inmates, or physical harm or the threat of physical harm to the staff of a state correctional institution or its inmates, or committed a violation of law that was not prosecuted, and the infractions or violations demonstrate that the offender has not been rehabilitated, [and]

(b) The offender's behavior while incarcerated, including, but not limited to the infractions and violations specified in division (C)(1)(a) of this section demonstrate that the offender continues to pose a threat to society.

(2) Regardless of the security level in which the offender is classified at the time of the hearing, the offender has been placed by the department in extended restrictive housing at any time within the year preceding the date of the hearing.

(3) At the time of the hearing, the offender is classified by the department as a security level three, four, or five, or at a higher security level.

R.C. 2967.271(C)(1), (2), and (3).

{¶ 8} A party seeking constitutional review of a statute may either present a facial challenge to the statute as a whole or challenge the statute as applied to a specific set of facts. *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, ¶ 37. Wilburn has raised a facial challenge to the Reagan Tokes Law. To successfully present such a challenge, he must demonstrate that the law is unconstitutional beyond a reasonable doubt. *State v. Bloomer*, 122 Ohio St.3d 200, 2009-Ohio-2462, 909 N.E.2d 1254, ¶ 41, citing *State v. Ferguson*, 120 Ohio St.3d 7, 2008-Ohio-4824, 896 N.E.2d 110, ¶ 12.

{¶ 9} When addressing constitutional challenges we remain mindful that all statutes have a strong presumption of constitutionality. *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 25. Thus, "if at

all possible, statutes must be construed in conformity with the Ohio and the United States Constitutions." *State v. Collier*, 62 Ohio St.3d 267, 269, 581 N.E.2d 552 (1991).

**A. Ripeness for Review**

{¶ 10} Wilburn contends that the portions of the Reagan Tokes Law that allow the ODRC to administratively extend his prison term beyond his presumptive minimum prison term are unconstitutional. The state argues that Wilburn has not yet served his minimum sentence, however, and the ODRC has not yet denied him release at the expiration of his minimum term of incarceration. Thus, the state asserts that Wilburn has not yet been subject to the possible application of the provisions of the Reagan Tokes Law that he challenges and, therefore, his constitutional challenges are not ripe for review.

{¶ 11} The Second, Third, and Twelfth District Courts of Appeals have implicitly decided that a defendant's constitutional challenge to the Reagan Tokes Law is ripe for review by upholding the statute as constitutional without addressing the ripeness issue. *See, e.g., State v. Leet,* 2d Dist. Montgomery No. 28670, 2020-Ohio-4592; *State v. Hacker*, 3d Dist. Logan No. 8-20-01, 2020-Ohio-5048; *State v. Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837.

{¶ 12} Other districts have expressly held that a defendant's constitutional challenge to the Reagan Tokes Law is not ripe for review. *See, e.g., State v. Ramey*, 4th Dist. Washington Nos. 20CA1 and 20CA2, 2021-Ohio-177; *State v. Halfhill*, 4th Dist. Meigs No. 20CA7, 2021-Ohio-177; *State v. Cochran*, 5th Dist. Licking No.

2019CA00122, 2020-Ohio-5329; *State v. Wolfe*, 5th Dist. Licking No. 2020CA00021; *State v. Maddox*, 6th Dist. Lucas No. CL-19-1253, 2020-Ohio-4702; *State v. Velliquette*, 6th Dist. Lucas No. L-19-1232, 2020-Ohio-4855; *State v. Montgomery*, 6th Dist. Lucas No. L-19-1202, 2020-Ohio-5552.[3] These courts concluded that the defendants' constitutional challenges to the Reagan Tokes Law were not ripe for review because the appellants had not served their minimum term of imprisonment and thus had not yet been subject to the application of the law.

{¶ 13} We find, however, that the well-reasoned dissents in *Cochran* and *Wolfe* offer the better analysis regarding why a defendant's challenge to the constitutionality of the Reagan Tokes Law is indeed ripe for review, even if that defendant has not yet been subject to the provisions of the law that could extend the defendant's presumptive minimum prison term.

{¶ 14} "Ripeness 'is peculiarly a question of timing.'" *State ex rel. Elyria Foundry Co. v. Indus. Comm.,* 82 Ohio St.3d 88, 89, 694 N.E.2d 459 (1998), quoting *Regional Reorganization Act Cases*, 419 U.S. 102, 140, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974). Three factors guide the ripeness inquiry: "'(1) the likelihood that the harm alleged by the plaintiffs will ever come to pass; (2) whether the factual record is sufficiently developed to produce a fair adjudication of the merits of the parties'

---

[3] On December 28, 2020, the Ohio Supreme Court determined that a conflict exists between *Maddox* and *Leet, supra*; *State v. Ferguson*, 2d Dist. Montgomery No. 28644, 2020-Ohio-4153, and *State v. Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837, and accepted the ripeness issue for review. *12/28/20, Case Announcements #2*, 2020-Ohio-6913.

respective claims; and (3) the hardship to the parties if judicial relief is denied at this stage in the proceedings.'" *Cochran* at ¶ 28 (Gwin, J., dissenting); *Wolfe* at ¶ 44 (Gwin, J., dissenting), both quoting *Berry v. Schmitt*, 688 F.3d 290, 298 (6th Cir.2012).

{¶ 15} Even when the direct application of a statute is open to a charge of remoteness because of a lengthy, built-in time delay before the statute takes effect, such as in this case, '"ripeness may be found as long as the statute's operation is inevitable (or nearly so)."' *Cochran,* 5th Dist. Licking No. 2019CA00122, 2020-Ohio-5329 at ¶ 28 (Gwin, J., dissenting); *Wolfe,* 5th Dist. Licking No. 2020CA00021, 2020-Ohio-5501 at ¶ 44 (Gwin, J., dissenting), both quoting *Riva v. Commonwealth of Massachusetts,* 61 F.3d 1003, 1010 (1st Cir.1995). *See also Signorelli v. Evans*, 637 F.2d 853 856-857 (2d Cir.1980) (if the injury is "clearly impending," the plaintiffs need not await consummation of the injury to bring their suit). As noted in *Cochran* and *Wolfe*, it is inevitable that every defendant in the state of Ohio who is convicted of a first- or second-degree felony for offenses occurring after March 22, 2019, will be sentenced under the Reagan Tokes Law. *Cochran* at ¶ 30 (Gwin, J., dissenting); *Wolfe* at ¶ 46 (Gwin, J., dissenting). Further,

> [i]t is a virtual certainty that a number of those individuals, perhaps a significantly large number, will have the [O]DRC extend his or her incarceration beyond the presumed release date. This is not an abstract or hypothetical case; rather, it is a virtual certainty to occur. Under Reagan Tokes, the question is not *if* a defendant will be denied his or her presumptive release date; but rather *when* a defendant's sentence will be extended.

(Emphasis sic.) *Cochran* at *id.*; *Wolfe* at *id.*

**{¶ 16}** The dissenting judge in *Cochran* and *Wolfe* found that the record before the court in those cases was sufficiently developed to allow the court to produce a fair adjudication of the parties' respective claims regarding the constitutionality of the statute and, further, that the hardship to the parties if judicial relief were denied was "real and immense." *Cochran* at ¶ 33 (Gwin, J., dissenting); *Wolfe* at ¶ 49 (Gwin, J., dissenting). The judge reasoned:

> At the present time, the indigent appellant, who wishes to raise a constitutional challenge to the law in his or her direct appeal as of right, has the assistance of appointed counsel. If, for example, the appellant must wait for two years for the [O]DRC to extend his sentence, both the inmate and the courts will face a myriad of legal hurdles. First, how will the inmate inform the court of his or her desire to appeal the constitutionality of the law? Next, is the inmate entitled to appointed counsel to pursue such an appeal? If the inmate is not, then an incarcerated inmate with limited legal resources and acumen will have to cobble together a highly involved constitutional argument without the assistance of counsel and with extremely limited access to legal resources. It will also become evident that the DRC decision extending the inmate's sentence is not part of the trial court record. In order to establish that the inmate's sentence was in fact extended, will the trial court be required to order the [O]DRC to file its decision with the clerk of courts for inclusion in the trial and appellate court records? Further, if the law is declared unconstitutional years from now, courts will be inundated with writs of habeas corpus, motions and other requests for release or resentencing from the hundreds of inmates who were sentenced under the law and not permitted to appeal the constitutionality of the law in the inmate's direct appeal. Finally, the inmate could potentially have been incarcerated perhaps years beyond his release date for the time it takes to decide the issue in the event the law is found to be unconstitutional.
>
> In addition, if the law is declared constitutional or unconstitutional, that holding will apply not just to the single inmate whose appeal is under consideration, but also to *all inmates that have been sentenced under the new law.*

(Emphasis sic.)  *Wolfe* at ¶ 49-50 (Gwin, J., dissenting); *see also Cochran* at ¶ 33 (Gwin, J., dissenting).

{¶ 17} Finding that the defendant had clearly demonstrated hardship if the constitutionality of the Reagan Tokes Law was not addressed by the court on the defendant's direct appeal, the dissent concluded that the question of the constitutionality of the Reagan Tokes Law was ripe for the court's review.  *Cochran* at ¶ 34 (Gwin, J., dissenting); *Wolfe* at ¶ 51 (Gwin, J., dissenting).

{¶ 18} We reach the same conclusion here.  The record is sufficiently developed to allow us to fairly adjudicate the parties' arguments regarding the constitutionality of the Reagan Tokes Law.  Further, Wilburn was sentenced under the law, and operation of the law is inevitable at the end of his minimum term of imprisonment.  Wilburn and other defendants sentenced under the law will also experience "real and immense" hardship if judicial relief is denied at this stage in the proceedings.  Accordingly, we find that Wilburn's constitutional challenges are ripe for review.

### B.  Separation of Powers

{¶ 19} "The separation-of-powers doctrine implicitly arises from our tripartite democratic form of government and recognizes that the executive, legislative, and judicial branches of our government have their own unique powers and duties that are separate and apart from the others." *State v. Thompson*, 92 Ohio St.3d 584, 586, 752 N.E.2d 276 (2001).

{¶ 20} Wilburn asserts that the indefinite sentencing portion of the Reagan Tokes Law violates the separation-of-powers doctrine because it impermissibly allows an administrative department of the executive branch to invade the province of the judiciary. He contends the law usurps judicial authority because under the law, the ODRC has the authority to extend his prison term without judicial oversight or involvement if he commits certain rule infractions or violations of the law. His argument is based upon the holdings in *State ex rel. Bray v. Russell*, 89 Ohio St.3d 132, 729 N.E.2d 359 (2000), and *State v. Oneal*, Hamilton C.P. No. B-1903562, 2019 WL 7670061 (Nov. 20, 2019).

{¶ 21} In *Bray*, the Ohio Supreme Court reviewed a constitutional challenge to former R.C. 2967.11, which allowed an executive branch parole board to impose a "bad time" extension on a prisoner's original prison term for offenses that would constitute a crime under Ohio or federal law, regardless of whether the prisoner was actually prosecuted for the offense.

{¶ 22} The court found that the statute authorized the executive branch to prosecute an inmate, determine whether a crime had been committed, and impose punishment for the crime; in doing so, the executive branch acted as judge, prosecutor, and jury, which went beyond the role of the executive branch. *Bray* at 135. The court stated: "In our constitutional scheme, the judicial power resides in the judicial branch. * * * The determination of guilt in a criminal matter and the sentencing of a defendant convicted of a crime are solely the province of the

judiciary." *Id.* at 136. Accordingly, the court found former R.C. 2967.11 unconstitutional because it violated the separation-of-powers doctrine. *Id.*

{¶ 23} Relying upon the reasoning in *Bray*, the trial court in *Oneal* concluded the Reagan Tokes Law is unconstitutional because it likewise cedes judicial powers to the executive branch. The trial court concluded that the statute impermissibly allows the ODRC to "conduct a hearing to determine the guilt of an alleged criminal offense," and thereby "deprive the judiciary of its exclusive authority to prosecute criminal offenses," in violation of the separation-of-powers doctrine.

{¶ 24} We find Wilburn's reliance on *Bray* and *Oneal* to be misplaced because there is a significant difference between the imposition of bad time as allowed by former R.C. 2967.11 and the Reagan Tokes Law. As the Second District Court of Appeals stated:

> R.C. 2967.11 authorized the parole board to sentence a defendant to an additional prison term beyond that which had been imposed by the trial court. In *Bray,* the defendant had served the entirety of the definite sentence imposed by the trial court; the parole board then tacked an additional prison term onto the defendant's sentence. In contrast, under Reagan Tokes, the executive branch cannot keep a defendant in prison beyond the maximum sentence imposed by the trial court. In short, Reagan Tokes does not allow the ODRC to lengthen a defendant's sentence beyond the maximum sentence imposed by the trial court. We thus conclude that *Bray* and *Oneal* do not compel the conclusion that the Reagan Tokes Law violates the separation-of-powers doctrine.

*State v. Barnes*, 2d Dist. Montgomery No. 28613, 2020-Ohio-4150, ¶ 36.

{¶ 25} *Oneal* did not address *Woods v. Telb*, 89 Ohio St.3d 504, 2000-Ohio-171, 733 N.E.2d 1103, decided a few months after *Bray*, in which the Ohio Supreme Court considered the constitutionality of R.C. 2967.28, Ohio's postrelease control

statute. The statute requires a court to impose postrelease control, but gives the Adult Parole Authority ("APA") discretion in managing postrelease control and determining sanctions for violation of its terms. The court found that the postrelease control statute was "clearly distinguishable" from the bad time statute at issue in *Bray* because, unlike additional prison time under the bad time statute, postrelease control terms are made part of the original judicially imposed sentence. *Woods* at 512. The court also found that the delegation of powers to the executive branch (the APA) regarding postrelease control was no different in terms of separation of powers than those granted under Ohio's system of parole, where the APA had "absolute discretion" over that portion of an offender's sentence. *Id.* Finally, the court found that nothing in the Parole Board's discretionary ability to impose postrelease control sanctions impeded the judiciary's ability to impose a sentence. *Id.* Thus, the court found no violation of the separation-of-powers doctrine. *Id.*

{¶ 26} In later decisions, the Ohio Supreme Court has made clear that "when the power to sanction is delegated to the executive branch, a separation-of-powers problem is avoided if the sanction is originally imposed by a court and included in its sentence." *State v. Ferguson*, 2d Dist. Montgomery No. 28644, 2020-Ohio-4153, ¶ 23, citing *Hernandez v. Kelly*, 108 Ohio St.3d 395, 2006-Ohio-126, 844 N.E.2d 301, ¶ 18-20, citing *State v. Jordan*, 104 Ohio St.3d 21, 2004-Ohio-6085, 817 N.E.2d 864, ¶ 19, citing *Woods* at 512-513. This is precisely the scheme under the Reagan Tokes Law:

> A court imposes both the minimum and maximum prison terms, including both in its sentence. The [O]DRC then determines whether the offender merits more than the minimum and up to the maximum imposed. In terms of the separation of powers, the delegation of power to the [O]DRC is like the system of post-release control: "Those terms are part of the actual sentence, unlike bad time, where a crime committed while incarcerated resulted in an additional sentence not imposed by the court. In other words, the court imposes the full sentence and the [ODRC] determines whether violations merit its imposition."

*Ferguson* at ¶ 23, quoting *Woods* at 511.

{¶ 27} Accordingly, we hold that the Reagan Tokes Law does not violate the separation-of-powers doctrine.

## C. Due Process

{¶ 28} Wilburn next asserts, relying on *Oneal*, that the Reagan Tokes Law violates his procedural due process rights. He contends that he has a protected liberty interest in release from prison upon the expiration of his minimum term of incarceration, and that "without some framework in place to ensure that R.C. 2967.271 hearings are conducted in a fair and consistent way, offenders will be deprived of due process."

{¶ 29} "When a state creates a liberty interest, the Due Process Clause requires fair procedures for its vindication — and courts will review the application of those constitutionally required procedures." *Swarthout v. Cooke*, 562 U.S. 216, 220, 131 S.Ct. 859, 178 L.Ed.2d 732 (2011). Assuming, without deciding, that Wilburn has a cognizable liberty interest in his presumptive minimum term release date, we consider what due process procedures are required if the state is to deprive him of that interest.

{¶ 30} "Requiring a defendant to remain in prison beyond the presumptive minimum term is akin to the decision to grant or deny parole." *Leet*, 2d Dist. Montgomery No. 28670, 2020-Ohio-4592 at ¶ 17. In the context of parole proceedings, the United States Supreme Court has held that the required due process procedures are minimal. Specifically, the court has found that a prisoner subject to parole receives adequate due process when he is allowed an opportunity to be heard and is provided a statement of the reasons why parole was denied. *Swarthout* at *id.*, citing *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 16, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). "The Constitution," the court held, "does not require more." *Id.*

{¶ 31} The Ohio Supreme Court has held that "the fundamental requisite of due process of law is the opportunity to be heard in a meaningful time and in a meaningful manner." *Woods*, 89 Ohio St.3d 504, 2000-Ohio-171, 733 N.E.2d 1103, at 513, citing *Goldberg v. Kelly*, 397 U.S. 254, 267, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). The Reagan Tokes Law provides such due process. Pursuant to R.C. 2967.271(E):

> The [ODRC] shall provide notices of hearings to be conducted under division (C) or (D) of this section in the same manner, and to the same persons, as specified in section 2967.12 and Chapter 2930 of the Revised Code with respect to hearings to be conducted regarding the possible release on parole of an inmate.

{¶ 32} The *Oneal* court correctly found that the purpose of due process protections is to minimize erroneous decision making. *Oneal,* Hamilton C.P. No. B-1903562, 2019 WL 7670061, at *5, citing *Greenholtz* at 8. "A hearing at which an

inmate can appear and present statements on his behalf" — such as that provided by the Reagan Tokes Law — "adequately safeguards against serious risks of error and thus satisfies due process." *Greenholtz* at 15.

{¶ 33} Contrary to *Oneal*, however, there is no due process requirement that the statutory scheme must give the decisionmaker a "hierarchy of misconduct" or a "guideline" as to "how each consideration shall be weighed" in determining whether an inmate's term can be extended. The Ohio Supreme Court has observed with respect to decisions about an inmate's release on parole that "for as long as parole has existed in Ohio, the executive branch (the APA and its predecessors) has had absolute discretion over that portion of an offender's sentence." *Woods* at 512. We find no reason to distinguish between the APA's exercise of its discretion in determining whether an inmate should be released on parole and the ODRC's exercise of discretion in determining whether an inmate's minimum term of incarceration should be extended.

{¶ 34} It is also not necessary, as asserted in *Oneal*, that a judge must be involved in the release decision. As observed by the Ohio Supreme Court with respect to parole, "the granting and revocation of parole are matters traditionally handled by administrative officers." *Woods,* 89 Ohio St.3d 504, 514, 2000-Ohio-171, 733 N.E.2d 1003. And even in the context of a parole revocation hearing, which requires greater due process protections, the United States Supreme Court has found that the decisionmaker "need not be judicial officers or lawyers." *Morrissey*

*v. Brewer*, 408 U.S. 471, 499, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The same reasoning applies here.

{¶ 35} The *Oneal* court also erred in finding that the ODRC will have "unfettered discretion" to assess the issues before it in deciding whether the presumption of release upon the minimum term of incarceration has been rebutted. R.C. 2967.271(C)(1), (2) and (3) set forth very specific factors for the ODRC to consider in determining whether an inmate may be imprisoned beyond his minimum release date, thereby limiting its discretion.

{¶ 36} Furthermore, inmates are given adequate notice of the conduct that will lead to rule infractions or restrictive housing assignments, factors that trigger the ODRC to extend an inmate's minimum term of incarceration. Ohio Adm. Code 5120-9-06 sets forth the inmate rules of conduct. Ohio Adm. Code 5120-9-08 provides detailed disciplinary procedures for inmate rule violations, with a hearing before the Rules Infraction Board and notice to the inmate of the hearing and an opportunity to appeal the decision of the board. Ohio Adm. Code 5120-9-10 sets forth the procedures for when and under what circumstances an inmate may be placed in and/or transferred to a restrictive housing assignment.

{¶ 37} Because the procedures employed under the Reagan Tokes Law provide at a minimum for notice of a hearing at which an inmate has an opportunity to be heard, we hold that the law does not violate Wilburn's right to procedural due process. The assignment of error is therefore overruled.

{¶ 38} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, JUDGE

SEAN C. GALLAGHER, P.J., and
MICHELLE J. SHEEHAN, J., CONCUR