[Cite as *State v. Sealey*, 2021-Ohio-1949.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                                :

    Plaintiff-Appellant,            :

                                       No. 109670

    v.                                        :

ANTOINE SEALEY, JR.,                        :

    Defendant-Appellee.            :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 10, 2021

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-644811-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Daniel T. Van, Assistant Prosecuting Attorney, *for appellant.*

Cullen Sweeney, Cuyahoga County Public Defender, and Frank Cavallo, Assistant Public Defender, *for appellee.*

LISA B. FORBES, P.J.:

{¶ 1} The state of Ohio appeals the trial court's finding the Reagan Tokes Law unconstitutional. After reviewing the facts of the case and pertinent law, we affirm the trial court's decision.

## I. Facts and Procedural History

{¶ 2} On January 13, 2020, Antoine Sealey, Jr. ("Sealey") pled guilty to aggravated robbery in violation of R.C. 2911.01(A)(1), a first-degree felony, with a one-year firearm specification. On February 12, 2020, the trial court found the Reagan Tokes Law unconstitutional and did not sentence Sealey under this statutory scheme. Rather, the court sentenced Sealey to three years in prison for the aggravated robbery and one year in prison for the firearm specification, to run consecutive to one another, for an aggregate prison term of four years. It is from this order that the state of Ohio appeals.

## II. Law and Analysis

### A. Standard of Review

{¶ 3} The constitutionality of a statute presents questions of law, which are "reviewed de novo, independently and without deference to the trial court's decision." *Andreyko v. Cincinnati*, 153 Ohio App.3d 108, 112, 2003-Ohio-2759, 791 N.E.2d 1025 (1st Dist.). Our review must be conducted in light of the notion that statutes "enjoy a strong presumption of constitutionality." *State v. Romage*, 138 Ohio St.3d 390, 2014-Ohio-783, 7 N.E.3d 1156, ¶ 7.

> A party may challenge a statute as unconstitutional on its face or as applied to a particular set of facts. A facial challenge to a statute is the

most difficult to bring successfully because the challenger must establish that there exists no set of circumstances under which the statute would be valid. The fact that a statute might operate unconstitutionally under some plausible set of circumstances is insufficient to render it wholly invalid.

(Citations omitted.) *Harrold v. Collier*, 107 Ohio St.3d 44, 2005-Ohio-5334, 836 N.E.2d 1165, ¶ 37. In the instant case, the state challenges the trial court's finding that the Reagan Tokes Law is unconstitutional as written.

{¶ 4} The Ohio Supreme Court has held that "[w]hen determining whether a law is facially invalid, a court must be careful not to exceed the statute's actual language and speculate about hypothetical or imaginary cases." *Wymsylo v. Bartec, Inc.*, 132 Ohio St.3d 167, 2012-Ohio-2187, 970 N.E.2d 898, ¶ 21, citing *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449-450, 128 S.Ct. 1184, 170 L.Ed. 151 (2008). Furthermore, "[r]eference to extrinsic facts is not required to resolve a facial challenge." *Wymsylo* at ¶ 21.

**B. Constitutionality of the Reagan Tokes Law**

{¶ 5} The Reagan Tokes Law sets forth an indefinite sentencing scheme for certain qualifying first- and second-degree felonies committed on or after March 22, 2019. R.C. 2967.271. Under this scheme, courts sentence a defendant to a minimum and maximum prison term, with a presumption that the defendant "shall be released from service of the sentence on the expiration of the offender's minimum prison term * * *." R.C. 2967.271(B). This presumption that the "offender shall be released" may be rebutted by the Ohio Department of Rehabilitation and Correction ("DRC")

"only if the department determines, at a hearing, that one or more of the following applies":

> (1) Regardless of the security level in which the offender is classified at the time of the hearing, both of the following apply:
>
> (a) During the offender's incarceration, the offender committed institutional rule infractions that involved compromising the security of a state correctional institution, compromising the safety of the staff of a state correctional institution or its inmates, or physical harm or the threat of physical harm to the staff of a state correctional institution or its inmates, or committed a violation of law that was not prosecuted, and the infractions or violations demonstrate that the offender has not been rehabilitated.
>
> (b) The offender's behavior while incarcerated, including, but not limited to the infractions and violations specified in division (C)(1)(a) of this section, demonstrate that the offender continues to pose a threat to society.
>
> (2) Regardless of the security level in which the offender is classified at the time of the hearing, the offender has been placed by the department in extended restrictive housing at any time within the year preceding the date of the hearing.
>
> (3) At the time of the hearing, the offender is classified by the department as a security level three, four, or five, or at a higher security level.

R.C. 2967.271(C).

{¶ 6} In other words, an inmate will be released at the end of his or her minimum prison term ("presumptive release date") unless the DRC takes action.

{¶ 7} In the case at hand, the trial court's journal entry declaring the Reagan Tokes Law unconstitutional included the following language: "This court adopts the analysis of Judge Tom Heekin in *State of Ohio v. William O'Neal*, Case No. B 1903562, Hamilton County Court of Common Pleas." Upon review, we find

the Reagan Tokes Law unconstitutional, although for reasons other than the analysis set forth in *State v. O'Neal,* Hamilton C.P. No. B 1903562 (Nov. 20, 2019).

### 1. Due Process

{¶ 8} Under the Fourteenth Amendment to the United States Constitution, the states shall not "deprive any person of life, liberty, or property, without due process of law." *See also* Fifth Amendment to the United States Constitution; Ohio Constitution Article I, Section 16. The United States Supreme Court has recognized that "the convicted felon does not forfeit all constitutional protections by reason of his conviction and confinement in prison. He retains a variety of important rights that the courts must be alert to protect." *Meachum v. Fano*, 427 U.S. 215, 225, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). "Inmates retain, for example, the right to be free from racial discrimination, * * * the right to due process, * * * and * * * certain protections of the First Amendment * * *." *Shaw v. Murphy*, 532 U.S. 223, 228-229, 121 S.Ct. 1475, 149 L.Ed.2d 420 (2001).

{¶ 9} The liberty interests protected under the Due Process Clause become limited to "the most basic" when the claimant is a prison inmate. *Hewitt v. Helms*, 459 U.S. 460, 467, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983) ("We have repeatedly said both that prison officials have broad administrative and discretionary authority over the institutions they manage and that lawfully incarcerated persons retain only a narrow range of protected liberty interests.").

{¶ 10} It is with that context in mind that we turn to the United States Supreme Court's two-step analysis for constitutional challenges based on due

process violations: "We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219, 131 S.Ct. 859, 178 L.Ed.2d 732 (2011).

### 2. Is There a Liberty Interest in the Reagan Tokes Law?

{¶ 11} A "liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty'" or "from an expectation or interest created by state laws or policies * * *." *Wilkinson v. Austin*, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005), citing *Vitek v. Jones*, 445 U.S. 480, 493-494, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (liberty interest in avoiding involuntary psychiatric treatment) and *Wolff v. McDonnell*, 418 U.S. 539, 555-556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (liberty interest in avoiding the withdrawal of state-created system of good-time credits). To analyze whether there is a liberty interest in the Reagan Tokes Law, we look first to United States Supreme Court authority, then to Ohio law for guidance.

{¶ 12} In *Wolff*, prison inmates in Nebraska challenged a state statute that authorized each penal facility to reduce an inmate's "good-time credit" if the inmate engaged in "flagrant or serious misconduct." *Id.* at 545-546. The United States Supreme Court found that the state of Nebraska "itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior." *Id.* at 557. Therefore, the court held, "the prisoner's interest has real substance and is sufficiently embraced within the Fourteenth Amendment 'liberty'

to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." *Id.*

{¶ 13} In a different setting, a California parole statute created a liberty interest by providing that the prison board "'shall set a release date unless it determines that * * * consideration of the public safety requires a more lengthy period of incarceration.'" *Swarthout*, 562 U.S. at 216-217, 131 S.Ct. 859, 178 L.Ed.2d 732, quoting Cal. Penal Code Ann. 3041(b). When a state "creates a liberty interest, the Due Process Clause requires fair procedures for its vindication — and * * * courts will review the application of those constitutionally required procedures." *Swarthout* at 220.

{¶ 14} Further guidance is found in *Wilkinson*. The United States Supreme Court made clear that inmates may have "a protected, state-created liberty interest in avoiding restrictive conditions of confinement" depending not on the particular language of the regulations regarding the conditions "but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Wilkinson*, 545 U.S. at 223, 125 S.Ct. 2384, 162 L.Ed.2d 174, quoting *Sandin v. Connor*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). The *Sandin* Court stated that "[t]he time has come to return to the due process principles" focusing on "the nature of the deprivation" rather than based on "the language of a particular regulation * * *." *Id.* at 481-483.

{¶ 15} As courts throughout Ohio have begun to review the constitutionality of the Reagan Tokes Law, many look to case law dealing with parole revocation and parole eligibility for guidance. *Compare State v. Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837, ¶ 17 ("The hearings conducted by the ODRC under R.C. 2967.271(C) are analogous to parole revocation proceedings, probation revocation proceedings, and postrelease control violation hearings * * *") *with State v. Leet*, 2d Dist. Montgomery No. 28670, 2020-Ohio-4592, ¶ 17 ("requiring a defendant to remain in prison beyond the presumptive minimum term is akin to the decision to grant or deny parole * * *" rather than parole revocation).

{¶ 16} The distinction between parole eligibility and parole revocation is significant when discussing due process because the liberty interest in parole revocation — which entails taking someone's freedom away — is much greater than the liberty interest in parole eligibility — which typically entails the hope or anticipation of freedom. *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 9, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) ("There is a crucial distinction between being deprived of a liberty one has, as in [revocation of] parole, and being denied a conditional liberty that one desires[,]" as in "discretionary parole release from confinement" or parole eligibility.). *See also Wolff*, U.S. 539 at 560, 94 S.Ct. 2963, 41 L.Ed.2d 935 ("Simply put, revocation proceedings determine whether the parolee will be free or in prison, a matter of obvious great moment to him.").

{¶ 17} In Ohio, parole revocation, unlike parole eligibility, "implicates a liberty interest which cannot be denied without certain procedural protections."

*State ex rel. Jackson v. McFaul,* 73 Ohio St.3d 186, 186, 652 N.E.2d 746 (1995). *See also* R.C. 2967.15(B). However, there is no presumption of release on parole in Ohio, thus there is no liberty interest at stake in parole eligibility proceedings. Ohio Adm.Code 5120:1-1-07(A) states that "[a]n inmate *may* be released on or about the date of his eligibility for release, unless the parole board * * * determines that he should not be released on such date for" various reasons. (Emphasis added.) Ohio Adm.Code 5120:1-1-07(C) states that "[t]he consideration of any single factor, or any group of factors, shall not create a presumption of release on parole * * *." This court has held that a "prisoner who is denied parole is not thereby deprived of 'liberty' if state law makes the parole decision discretionary. Under R.C. 2967.03, the parole decision is discretionary." *State v. Ferguson*, 8th Dist. Cuyahoga No. 82984, 2004-Ohio-487, ¶ 9-10. *Compare Swarthout*, 562 U.S. at 216-217, 131 S.Ct. 859, 178 L.Ed.2d 732, quoting Cal. Penal Code Ann. 3041(b) (the prison board "'shall set a release date unless it determines that * * * consideration of the public safety requires a more lengthy period of incarceration.'").

{¶ 18} Unlike Ohio's parole eligibility proceedings, the Reagan Tokes Law includes an express presumption of release: "When an offender is sentenced to a non-life felony indefinite prison term, there shall be a presumption that the person shall be released from service of the sentence on the expiration of the offender's minimum prison term * * *." R.C. 2967.271(B). That presumption of release is repeated in R.C. 2967.271(C): "Unless the [DRC] rebuts the presumption, the offender shall be released from service of the sentence on the expiration of the

offender's minimum prison term* * *." A liberty interest may arise "from an expectation or interest created by state laws or policies." *Wolff,* 418 U.S. at 557, 94 S.Ct. 2963, 41 L.Ed.2d 935. The plain language of the Reagan Tokes Law creates an expectation of release.

{¶ 19} We find that, like the Nebraska statute in *Wolff* and the California statute in *Swarthout,* the Reagan Tokes Law creates a liberty interest. We also find that, like the nature of the deprivation found in *Wilkinson* and *Sandin*, Ohio prison inmates have an inherent liberty interest in being released from confinement on their presumptive release date under the Reagan Tokes Law. We agree with the Twelfth District Court of Appeals' opinion in *Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837, that the presumptive release date mandate is more akin to parole revocation proceedings than parole eligibility proceedings. The liberty interest at stake here is the inmate's freedom.

{¶ 20} As of the date of this opinion, this court has found the Reagan Tokes Law constitutional in two cases, *State v. Wilburn*, 8th Dist. Cuyahoga No. 109507, 2021-Ohio-578, and *State v. Simmons*, 8th Dist. Cuyahoga No. 109476, 2021-Ohio-939. In both opinions, this court assumed without deciding that the Reagan Tokes Law created a liberty interest, while at the same time stating that it was akin to parole eligibility. *Wilburn* at ¶ 30; *Simmons* at ¶ 19. We disagree with the analogy to Ohio's parole eligibility regimen because we find that the inmate has a liberty interest in being released from prison on the presumptive release date.

**3. What Process is Due?**

{¶ 21} Having found that the Reagan Tokes Law creates a liberty interest, we turn our attention to what process is due in light of that liberty interest. "Our courts have long recognized that due process requires both notice and an opportunity to be heard." *In re Thompkins*, 115 Ohio St.3d 409, 2007-Ohio-5238, 875 N.E.2d 582, ¶ 13. "[T]he fundamental requisite of due process of law is the opportunity to be heard in a meaningful time and in a meaningful manner." *Woods v. Telb*, 89 Ohio St.3d 504, 514, 733 N.E.2d 1103 (2000). Additionally, in the criminal context, the accused is entitled to fair notice of what conduct is "punishable." *State v. Philpotts*, 8th Dist. Cuyahoga No. 107374, 2019-Ohio-2911. "This refers to the principle that due process requires criminal statutes to be written clearly so that individuals are provided with a fair warning that a certain conduct is within the statute's prohibition." *Id.* at ¶ 44.

{¶ 22} "It is axiomatic that due process 'is flexible and calls for such procedural protections as the particular situation demands.'" *Greenholtz*, 442 U.S. at 12, 99 S.Ct. 2100, 60 L.Ed.2d 668, quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). In considering what process is due to protect the liberty interest created by the Reagan Tokes Law, we are mindful that the United States Supreme Court recognized that:

> Lawful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen, a "retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 334 US. 266, 285 (1948). But though his rights may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for

crime. There is no iron curtain drawn between the Constitution and the prisons of this country. * * * Prisoners may * * * claim the protections of the Due Process Clause. They may not be deprived of life, liberty, or property without due process of law.

*Wolff*, 418 U.S. at 555-556, 94 S.Ct. 2963, 41 L.Ed.2d 935.

{¶ 23} To analyze what process is due, the United States Supreme Court has provided a framework requiring consideration of three factors:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Wilkinson*, 545 U.S. at 224-225, 125 S.Ct. 2384, 162 L.Ed.2d 174, quoting *Matthews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

{¶ 24} The *Matthews* factors should be balanced. In removing an individual from free society for a parole violation, as in *Morrissey*, or revoking good-time credits based on some specific serious misbehavior, as in *Wolff*, "more formal, adversary-type procedures" might be useful; on the other hand, "where the inquiry draws more on the experience of prison administrators, and where the State's interest implicates the safety" of others, more informal, nonadversarial procedures are more appropriate. *Wilkinson* at 229.

{¶ 25} Applying the *Matthews* factors to the Reagan Tokes Law, we find that the private interest is an inmate's freedom; the risk of erroneous deprivation is high, even taking into consideration the diminished protection afforded a prison inmate;

and the government's interest in running prisons is strong and its resources are scarce.

{¶ 26} As explained by the *Morrissey* Court "the minimum requirements of due process" include the following for parole revocation proceedings:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Morrisey*, 408 U.S. at 489, 92 S.Ct. 2593, 33 L.Ed.2d 484. The *Morrisey* due process safeguards have been applied to proceedings other than parole revocation. *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (applying *Morrissey's* due process requirements regarding parole revocation hearings to probation violation hearings); *Woods*, 89 Ohio St.3d 504, 733 N.E.2d 1103 (applying *Morrissey's* due process requirements to postrelease control violation hearings).

{¶ 27} In the context of prison discipline, the *Wolff* Court held that inmates facing a reduction of their good-time credit must be provided "advance written notice of the claimed violation and a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken." *Wolff*, 418 U.S. at 563, 94 S.Ct. 2963, 41 L.Ed.2d 935. Specifically, the court held that "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a

defense." *Id.* at 564. Additionally, "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.* at 566. The *Wolff* Court concluded that "some, but not all, of the procedures specified in *Morrissey* * * * must accompany the deprivation of good time by state prison authorities," although the procedures are "not graven in stone." *Id.* at 571-572.

{¶ 28} In the context of a statutorily created liberty interest in parole, the *Swarthout* Court found the due process "procedures required are minimal." *Swarthout*, 562 U.S. at 220, 131 S.Ct. 859, 178 L.Ed.2d 732. The prisoners at issue received adequate process when "[t]hey were allowed to speak at their parole hearings and to contest the evidence against them, were afforded access to their records in advance, and were notified as to the reasons why parole was denied." *Id.* at 221.

### 4. Does the Reagan Tokes Law Satisfy the Requirements of Due Process?

{¶ 29} Next, we determine whether the procedures identified in R.C. 2967.271 for rebutting the presumptive release date and extending the prison term are sufficient to protect inmates' due process rights in light of the guidance as discussed in this opinion.

{¶ 30} For the reasons that follow, we disagree with the holdings in both *Wilburn* and *Simmons*, where this court determined that the Reagan Tokes Law provides adequate due process safeguards, including "notice and an opportunity to

be heard." *Simmons*, 8th Dist. Cuyahoga No. 109476, 2021-Ohio-939, at ¶ 21, citing *Wilburn*, 8th Dist. Cuyahoga No. 109507, 2021-Ohio-578, at ¶ 36. Specifically, this court referenced R.C. 2967.271(C)(1), (2), and (3); 2967.271(E); and various provisions of the Ohio Administrative Code. *See Wilburn* at ¶ 31-36, and *Simmons* at ¶ 21.

{¶ 31} R.C. 2967.271(C) does not set forth any procedures for the rebuttable presumption hearing, and most importantly, it does not require that the hearing be meaningful. The only guidance the statute gives is (a) the DRC may rebut the presumption of release, and (b) the DRC decides whether it has done so. *See generally Columbus-Suburban Coach Lines v. Pub. Utils. Comm.*, 20 Ohio St.2d 125, 127, 254 N.E.2d 8 (1969) ("In determining legislative intent it is the duty of this court to give effect to the words used, not to delete words used or insert words not used.").

{¶ 32} Subsections (1), (2), and (3) of R.C. 2967.271(C) set forth behavior and circumstances that may serve as the basis for the DRC to rebut the presumption of release.[1] For example, the DRC may rely on certain prison rule infractions committed by the offender while incarcerated as part of the hearing. Ohio Adm.Code 5120-9-06 defines DRC "disciplinary violations * * * of institutional or departmental rules and regulations," and Ohio Adm.Code 5120-9-08 and 5120-9-10

---

[1] For the purpose of this analysis, we assume without deciding that R.C. 2967.271(C)(1), (2), and (3), along with Ohio Adm.Code 5120-9-06, provide fair notice to inmates of what prison rule infractions are within the Reagan Tokes Law's prohibition.

set forth disciplinary procedures for prison rule infractions and restrictive housing assignments. However, how — if at all — those administrative rules overlap with or apply to the Reagan Tokes Law rebuttable presumption hearing is wholly unexplained by the Reagan Tokes Law. *See* R.C. 2967.271(C)(1)(a).

{¶ 33} Moreover, the DRC may rebut the presumption of release based on the inmate having "committed a violation of law that was not prosecuted." R.C. 2967.271(C)(1)(a). The statute does not provide that the inmate be notified that he or she is being accused of committing a violation of law that has not been prosecuted or be present at the hearing, much less that he or she be given an opportunity to defend against the allegation of such unprosecuted crime at the hearing where the DRC seeks to rebut the presumption of his or her release.

{¶ 34} Furthermore, if a rule infraction or an unprosecuted crime is relied on by the DRC to rebut the presumption of release, the DRC must also establish that the "offender has not been rehabilitated" and that the "offender continues to pose a threat to society." R.C. 2967.271(C)(1)(a) and (b). Again, the statute is silent on whether the offender will be provided information about the factual basis the DRC intends to rely on to establish either of these necessary elements for rebuttal, and the statute makes no provision for the offender to be given an opportunity to rebut the assertions.

{¶ 35} If the DRC determines that the DRC has rebutted the presumption of release pursuant to R.C. 2967.271(C), the DRC "may maintain the offender's incarceration * * * after the expiration of the offender's minimum prison term * * *

for an additional period of incarceration determined by the [DRC] and shall not exceed the offender's maximum prison term" under R.C. 2967.271(D). There are no guidelines whatsoever concerning how the DRC makes its decisions under subsection (D). Additionally, R.C. 2967.271(D) does not provide for a hearing separate from the hearing required under subsection (C).

{¶ 36} R.C. 2967.271(E) does not protect prison inmates' due process rights. Subsection (E) states that the DRC "shall provide notices of hearings to be conducted under division (C) or (D) of this section in the same manner, and to the same persons, as specified in section 2967.12 and Chapter 2930 of the Revised Code with respect to hearings to be conducted regarding the possible release on parole of an inmate."[2] R.C. 2967.12 addresses individuals and entities to whom notice shall be given in the event the adult parole authority recommends a pardon or commutation, or grants parole. R.C. Chapter 2930 outlines victims' rights. Specifically, subsection (E) provides for notice of the Reagan Tokes Law hearings to be given to the prosecuting attorney from the inmate's case; the judge or presiding judge of the court in which the inmate was indicted; the victims or victims' representatives of the crimes of which the inmate was convicted; and certain law enforcement agencies. Nothing in subsection (E) provides notice of the hearing to the inmate.

---

[2] A hearing is required under the Reagan Tokes Law only under subsection (C). Subsection (D) does not provide for a hearing, other than the potential for subsequent subsection (C) hearings should the DRC decide to extend the inmate's stay in prison beyond the presumptive release date after the initial rebuttable presumption hearing.

{¶ 37} In *Wilburn*, this court held that the Reagan Tokes Law provides a "hearing at which an inmate can appear and present statements on his behalf." *Wilburn*, 8th Dist. Cuyahoga No. 109507, 2021-Ohio-578, at ¶ 32, citing *Greenholtz* 442 U.S. at 15, 99 S.Ct. 2100, 60 L.Ed.2d 668. *See also Simmons*, 8th Dist. Cuyahoga No. 109476, 2021-Ohio-939, at ¶ 21. But, as discussed, nothing in R.C. 2967.271(C) or (E) establishes that the inmate can appear and present statements on his or her behalf at the rebuttable presumption hearing.

{¶ 38} While we recognize that R.C. 2967.271 provides for a hearing, nothing in the statute requires that this hearing be meaningful. There is no provision in the Reagan Tokes Law that the inmate be made aware of the evidence the DRC intends to use to rebut the presumption, "be heard in person," be allowed "to present witnesses and documentary evidence," or be allowed "to confront and cross-examine" witnesses. *Morrissey*, 408 U.S. at 489, 92 S.Ct. 2593, 33 L.Ed.2d 484. Nothing in the statute provides that the inmate will receive notice of the allegations with ample time to "give the charged party a chance to marshal the facts in his defense and to clarify what the charges are * * *." *Wolff*, 418 U.S. at 564, 94 S.Ct. 2963, 41 L.Ed.2d 935. Nothing requires the determinations to be made by independent, neutral, and detached decisionmakers. No provision requires the factfinders to explain their determinations. In other words, the Reagan Tokes Law does not provide the due process safeguards set forth in *Morrissey, Wolff,* and their progeny.

{¶ 39} We find that the Reagan Tokes Law, as written, does not afford inmates a meaningful hearing, which is the fundamental element of due process required by the liberty interest the statute itself creates. In other words, without looking at extrinsic facts or speculating about hypothetical or imaginary scenarios, which is not proper in the analysis of a facial challenge to the constitutionality of a statute, the Reagan Tokes Law is incompatible with constitutional due process. We are mindful that the analogy of Reagan Tokes Law proceedings and parole revocation or prison discipline proceedings may not be perfectly on point. Such is the nature of analogies. However, we conclude that the Reagan Tokes Law triggers more than the minimum due process protections. The *Morrissey* and *Wolff* requirements should serve as guidelines for Reagan Tokes Law proceedings. Of particular concern is how these proceedings will impact inmates who suffer from mental-health and substance-abuse issues. But failing to provide an inmate the right to present a defense — any defense at all — flies in the face of well-established due process jurisprudence at its very core.

{¶ 40} What process is due is a malleable concept, and one we think better left to the legislature to sort out. Courts cannot simply rewrite a statute to make it constitutional. *Pratte v. Stewart*, 125 Ohio St.3d 473, 2010-Ohio-1860, 929 N.E.2d 415, ¶ 54. The Reagan Tokes Law remains young and its implementation untested. Our analysis concludes that subsections (C) and (D) are unconstitutional. However, we stop short of delineating the procedural safeguards necessary to align the statute's proceedings with the Fourteenth Amendment to the United States

Constitution and Article I, Section 16 of the Ohio Constitution. *See generally Sandin*, 515 U.S. at 482, 115 S.Ct. 2293, 132 L.Ed.2d 418 (noting the negative effects of involving the "courts in the day-to-day management of prisons, often squandering judicial resources with little offsetting benefit to anyone. In doing so, it has run counter to the view expressed in several of our cases that federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment").

{¶ 41} The Ohio legislature knows how to include due process safeguards in statutes. For example, in R.C. 2967.28(E)(5)(d), the legislature authorized the DRC to adopt rules in accordance with Chapter 119 of the Revised Code that "[e]stablish standards to be used by the adult parole authority in imposing further sanctions" for postrelease control violations, "including standards that * * * [e]nsure procedural due process to an alleged violator * * *". As another example, the legislature expressly specified due process protections in R.C. 2971.04, which addresses parole board termination of its control over certain offenders' service of their prison terms. That statute itself provides "[t]he offender has the right to be present at any hearing held under this section. At the hearing, the offender and the prosecuting attorney may make a statement and present evidence as to whether the parole board should terminate its control over the offender's service of the prison term * * *."

{¶ 42} This court is aware that effective March 15, 2021, the director of the DRC issued policy number 105-PBD-15 establishing procedures for the "Additional Term Hearing Process" under the Reagan Tokes Law. That policy was not in effect

at the time the parties brought this appeal, it was not in effect at the time the parties submitted their briefs, and it was not in effect at the time the parties participated in oral argument in this case. It is not before this court to consider whether the DRC policy provides due process protections that are absent from the statute. *See State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, 19 N.E.3d 888.

{¶ 43} The protected liberty interest in Reagan Tokes Law proceedings is the expectation of release from prison on the presumptive release date. In other words, the nature of the deprivation at issue is freedom. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the constitution] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S.Ct.2491, 150 L.Ed.2d 653 (2001).

> [I]t is clear that a convict does not lose all his constitutional rights once he enters the prison population; constitutional rights of a fundamental nature, adapted to the context and penologic purposes of the imprisonment, are still available to him. * * * The extension of fundamental fairness to prison inmates is not in any way inconsistent with appropriate penologic considerations; indeed, it may well be that the grant of basic constitutional rights to prisoners will enhance, rather than impede, legitimate penologic ends.

*In re Lamb*, 34 Ohio App.2d 85, 87-88, 296 N.E.2d 280 (8th Dist.1973).

{¶ 44} As written, the Reagan Tokes Law does not satisfy the requirements of due process and, as such, violates Sealey's constitutional rights.

## III. Conclusion

{¶ 45} R.C. 2967.271 creates a constitutionally protected liberty interest in being released from prison on the presumptive release date. However, R.C. 2967.271 "does not contain adequate procedural protections to prevent the

deprivation of that interest without due process of law." *CT Ohio Portsmouth, L.L.C. v. Ohio Dept. of Medicaid*, 10th Dist. Franklin No. 19AP-588, 2020-Ohio-5091, ¶ 55. The state's assignment of error is overruled, and Sealey's prison sentence is affirmed. Furthermore, the trial court's finding the Reagan Tokes Law unconstitutional is affirmed, albeit for different reasons than those relied upon by the trial court and set forth in *O'Neal*, Hamilton C.P. No. B 1903562.

{¶ 46} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue of out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
EMANUELLA D. GROVES, J., CONCUR