[Cite as *State v. Hughes*, 2021-Ohio-3127.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 21CA1127 |
| Plaintiff-Appellee, | : | |
| v. | : | DECISION AND JUDGMENT ENTRY |
| KRISTINA HUGHES, | : | |
| Defendant-Appellant. | : | **RELEASED 9/01/2021** |

_____
APPEARANCES:

Brian T. Goldberg, Schuh & Goldberg, LLP, Cincinnati, Ohio, for appellant.

David Kelley, Adams County Prosecutor, Mark R. Weaver and Ryan M. Stubenrauch, Adams County Assistant Prosecutors, West Union, Ohio, for appellee.
_____
Hess, J.

{¶1} Kristina Hughes appeals her conviction for felonious assault and endangering children. In her first assignment of error, Hughes contends that the trial court erred when it failed to merge her felonious assault and endangering children offenses for purposes of sentencing. However, her conduct constituting felonious assault was committed separately from her conduct constituting endangering children and resulted in different identifiable harms. Thus, she failed to establish that R.C. 2941.25 prohibits multiple punishments for these two offenses. We reject her merger argument.

{¶2} In her second and third assignments of error, Hughes asserts the trial court erred by improperly sentencing her to consecutive prison terms and imposing the maximum prison sentence for felonious assault. We overrule her second assignment of

error and affirm the trial court's imposition of consecutive sentences pursuant to R.C. 2929.14(C)(4)(b). The record supports the trial court's finding because the harm to the victim was sufficiently severe and Hughes's conduct was exceptionally egregious. Hughes has failed to establish by clear and convincing evidence that the consecutive sentence is contrary to law or not supported by the record.

{¶3}   We also overrule her third assignment of error contesting her maximum sentence for felonious assault. Hughes does not ask us to review whether the record supports the trial court's findings under R.C. 2953.08(G)(2)(a), but instead asks us to review the trial court's findings as they relate to the seriousness of the physical harm she caused the victim – a finding under R.C. 2929.12(B)(2). We have no authority to review the record to determine whether it supports the trial court's findings under R.C. 2929.12 or to modify or vacate the sentence on this ground.

{¶4}   In her fourth assignment of error, Hughes contends that the trial court erred in issuing a no-contact order in addition to her prison term. She argues that a no-contact order is a community control sanction and cannot be imposed where a prison term has been imposed for the same offense. The state poses an interesting and novel argument that the Marsy's Law amendment to the Ohio Constitution now permits the trial court to impose a no-contact order concurrent with a prison term. The state contends that Marsy's Law provides an exception to the existing Ohio Supreme Court case law which prohibits the imposition of community control sanctions and a prison term for the same offense. However, we find that the trial court's order was not imposed under Marsy's Law so it has no application here. We decline the state's invitation to wade into these unchartered waters. Under existing case law, the trial court erred when

it imposed a no-contact order and a prison term for the same felony offense. We sustain Hughes's fourth assignment of error, vacate the no-contact order, and remand for the trial court to issue a corrected sentencing entry that removes references to that order.

{¶5}   For her fifth assignment of error, Hughes contends that the Reagan Tokes Act is unconstitutional, and the trial court erred by sentencing her under that Act. However, we find that Hughes's constitutional challenge is not ripe for review. Hughes has not yet been subject to the application of the provisions, has not served her minimum time, and therefore has not been denied release at the expiration of her minimum term of incarceration. We overrule her fifth assignment of error.

{¶6}   In her sixth and seventh assignments of error, Hughes asserts that the trial court erred in accepting her guilty plea because she received ineffective assistance of counsel and did not enter the plea knowingly and voluntarily. However, Hughes has failed to establish that her trial counsel's performance was deficient or that she suffered prejudice. Additionally, she failed to show that her plea was not made knowingly and voluntarily because, though she made some exculpatory remarks during the change of plea hearing, the trial court complied fully with Crim.R. 11 after which Hughes unequivocally pleaded guilty to both offenses.

{¶7}   We sustain Hughes's fourth assignment of error, overrule the remaining assignments of error, vacate the no-contact order, and remand for the trial court to issue a corrected sentencing entry that removes reference to the no-contact order. We affirm the trial court's judgment in all other respects.

## I. PROCEDURAL HISTORY

{¶8} In October 2019, the Adams County grand jury indicted Hughes on one count of felonious assault, a violation of R.C. 2903.11(A)(1), and one count of endangering children, a violation of R.C. 2919.22(B)(2), both second-degree felonies. Hughes initially pleaded not guilty, but in January 2020 she entered into a plea agreement with the state and entered a guilty plea to felonious assault in exchange for the state's dismissal of the endangering children count. However, in late March 2020, Hughes retained new counsel and asked to withdraw her guilty plea. The trial court granted her motion, and the state reinstated the endangering children count. The state also successfully moved to amend the indictment to accurately reflect the dates on which the offenses occurred.

{¶9} In December 2020, Hughes changed her plea again. Pursuant to the plea agreement with the state, Hughes pleaded guilty to felonious assault, the state amended the endangering children offense from a second-degree offense under R.C. 2919.22(B)(2) to a third-degree offense under R.C. 2919.22(B)(4), Hughes pleaded guilty to the amended endangering children offense, and the parties stipulated to a 36-month prison term on the endangering children offense. The trial court sentenced Hughes to an indefinite prison term of 8 to 12 years for felonious assault and the stipulated prison term of 36 months for endangering children, which was ordered to be served consecutively, for a total prison term of 11 years to 15 years. The court also ordered Hughes to pay a $5,000 fine and to have no contact with the victim.

## II. ASSIGNMENTS OF ERROR

{¶10} Hughes presents seven assignments of error:

I.      The trial court erred to the prejudice of Ms. Hughes by failing to merge allied offenses of similar import at the time of sentencing.

II.     The trial court erred to the prejudice of Ms. Hughes by improperly sentencing her to consecutive prison terms.

III.    The trial court erred by imposing an indefinite maximum prison sentence of 8-12 years consecutive with a 36 month maximum prison sentence that was not supported by the record.

IV.     The trial court erred to the prejudice of Ms. Hughes by sentencing her to prison for a term of incarceration, and issuing a no-contact order.

V.      The Reagan Tokes Act, as enacted by the Ohio Legislator [sic] is unconstitutional, and the trial court erred by sentencing Ms. Hughes under that Act.

VI.     The trial court erred to the prejudice of Ms. Hughes Sixth Amendment rights by entering judgement [sic] of conviction after a plea and sentencing at which she received ineffective assistance of counsel.

VII.    The trial court erred to the prejudice of Ms. Hughes by accepting a plea that was not made knowingly or voluntarily.

### III.  ALLIED OFFENSES OF SIMILAR IMPORT

{¶11} In the first assignment of error, Hughes contends that the trial court erred when it failed to merge allied offenses of similar import.  She contends that the endangering children count was based on her placing the two-year-old victim in cold water, making him squat, and placing hot sauce in his mouth – all which occurred "a couple of times" and the felonious assault count was based on her hitting the victim with a belt and her hand, causing permanent scarring – which happened "probably at least ten" different times. These offenses occurred April through September, 2019. Hughes argues that the acts that constitute endangering children (cold water, squatting, hot sauce) are consistent with the elements of felonious assault and the acts that constitute felonious assault (striking victim with her hand and belt, resulting in permanent scarring)

are consistent with endangering children. Thus, she contends that the offenses of felonious assault and endangering children were allied offenses of similar import.

**{¶12}** The state argues that the acts that form the basis for the endangering children offense would not meet the elements of felonious assault because, although terrible and torturous, did not result in serious physical harm, an element of felonious assault. In contrast, the beatings with hand and belt resulted in permanent scarring and were separate offenses with a dissimilar import.

A.  General Principles and Standard of Review

**{¶13}** The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."  "This protection applies to Ohio citizens through the Fourteenth Amendment to the United States Constitution * * * and is additionally guaranteed by the Ohio Constitution, Article I, Section 10."  *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 10.  "This constitutional protection prohibits multiple punishments in a single trial for the same conduct in the absence of a clear indication of contrary legislative intent."  *State v. Fannon*, 2018-Ohio-5242, 117 N.E.3d 10, ¶ 129 (4th Dist.), citing *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).

**{¶14}** "The General Assembly enacted R.C. 2941.25 to identify when a court may impose multiple punishments[.]"  *Id.* at ¶ 130.  R.C. 2941.25 states:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶15}** The sentencing court has a mandatory duty to merge allied offenses of similar import. *State v. Stapleton*, 4th Dist. Pickaway No. 19CA7, 2020-Ohio-4479, ¶ 50. However, the defendant has the burden to establish R.C. 2941.25 prohibits multiple punishments. *Id.* at ¶ 52. "We apply a de novo standard to review a trial court's determination of whether offenses constitute allied offenses of similar import requiring merger under R.C. 2941.25." *Fannon* at ¶ 131, citing *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28.

**{¶16}** The determination whether an offender has been found guilty of allied offenses of similar import "is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct," *Ruff* at ¶ 26, and "an offense may be committed in a variety of ways." *Id.* at ¶ 30. In *Ruff*, the Supreme Court of Ohio explained that an accused may be convicted and sentenced for multiple offenses when "(1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation." *Id.* at ¶ 25.

When determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must answer three essential questions: "(1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions." *State v. Earley*, 145 Ohio St.3d 281, 2015-Ohio-4615, 49 N.E.3d 266, ¶ 12, citing *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 31 and paragraphs one, two, and three of the syllabus. Accordingly, courts must consider "[t]he conduct, the animus, and the import." *Id.*

*State v. Cunningham*, 4th Dist. Ross No. 19CA3698, 2021-Ohio-416, ¶ 23.

**{¶17}** Under current Ohio law courts can only impose multiple punishments in a single trial for a defendant's conduct under two situations: 1) where the charged crimes are not allied offenses, i.e., it is not possible to commit multiple crimes with the same action, *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, and 2) the crimes are allied offenses but the defendant's actions have dissimilar import, i.e., the crimes were committed separately, or with a separate animus, or the resulting harm for each offense is separate and identifiable. *State v. Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, paragraph one of the syllabus; *State v. Louis*, 2016-Ohio-7596, 73 N.E.3d 917, ¶ 90-95 (4th Dist.); *State v. Smith*, 2017-Ohio-537, 85 N.E.3d 304, ¶ 15 (8th Dist.) ("Allied offense analysis interpreting R.C. 2941.25, from *Rance* to *Ruff*, is only implicated where the conduct can be construed to constitute two or more allied offenses.").

**{¶18}** However, here Hughes did not object in the trial court to separate sentences for felonious assault and endangering children, so we review this issue under the plain error standard of review. In other words, appellant "has the burden to demonstrate a reasonable probability that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus; absent that showing, the accused cannot demonstrate that the trial court's failure to inquire whether the convictions merge for purposes of sentencing was plain error." *State v. Cambron*, 2020-Ohio-819, 152 N.E.3d 824, ¶ 9 (4th Dist.), citing *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 3.

### B. Felonious Assault and Endangering Children Merger Analysis

#### 1. Allied Offenses—Step 1

**{¶19}** Initially, we look to see if the charges Hughes faced represent allied offenses. To accomplish that we must look at the defendant's conduct to determine if it was possible to both commit one offense and commit the other by that conduct. *Johnson* at ¶ 48. To do that we must also examine the crimes at issue. *Id.*

**{¶20}** Felonious assault is prohibited by R.C. 2903.11(A)(1), which states, "(A) No person shall knowingly do either of the following: (1) Cause serious physical harm to another * * *." Endangering children is prohibited by R.C. 2919.22(B)(4), which states, "(B) No person shall do any of the following to a child under eighteen years of age * * * (4) Repeatedly administer unwarranted disciplinary measures to the child, when there is a substantial risk that such conduct, if continued, will seriously impair or retard the child's mental health or development * * *."

**{¶21}** Hughes hit the two-year-old victim repeatedly with her hand and a leather belt on areas of his body that were already suffering open wounds. Because these beatings could be "repeatedly administered unwarranted disciplinary measures that had a substantial risk of seriously impairing or retarding the child's mental health or development," we conclude it was possible for Hughes to commit the offense of felonious assault and the offense of endangering children under R.C. 2919.22(B)(4) with the same conduct and they are allied offenses.

#### 2. Offenses of Similar Import—Step 2

**{¶22}** However, even though it is possible to commit both offenses with the same conduct, and thus they are allied offenses, they are not allied offenses of similar

import. We conclude that Hughes can be separately punished for each one. Hughes's conduct of felonious assault and her conduct of endangering children were of dissimilar import, i.e., they were committed with separate conduct, on different occasions, and resulted in separate, identifiable harms.

**{¶23}** For the conduct that formed the basis for her felonious assault conviction, Hughes intentionally beat the two-year-old victim with her hand and a leather belt on at least 10 different occasions, while the victim was already suffering from open wounds on his buttocks, causing permanent scarring. The permanent scarring constitutes serious physical harm:

> "Serious physical harm" is defined under R.C. 2901.01(A)(5)(c), (d), and (e) as including harm that produces "temporary, substantial incapacity," "temporary, serious disfigurement," or "acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." *State v. Adams*, 2016-Ohio-7772, 84 N.E.3d 155, ¶ 25 (4th Dist.); quoting *State v. Scott*, 4th Dist. Washington No. 15CA2, 2015-Ohio-4170, ¶ 23.

*State v. Miller*, 4th Dist. Hocking No. 18CA3, 2019-Ohio-92, ¶ 30.

**{¶24}** For the conduct that formed the basis for her endangering children conviction, on several different occasions as disciplinary measures Hughes placed the two-year-old victim in a very cold shower, forced the victim to squat for extensive lengths of time, and poured hot sauce down his throat. These punishments occurred on separate days and constituted a course of conduct that happened over time. And although this conduct was exceptionally cruel, it resulted in separate, primarily temporary and psychological, identifiable harm that differed from the serious physical harm, including permanent scarring, caused by the beatings.

{¶25} Hughes failed to meet her burden to demonstrate a reasonable probability that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus. The trial court did not plainly err in failing to merge Hughes's convictions for purposes of sentencing. We overrule her first assignment of error.

## IV.  CONSECUTIVE PRISON TERMS

{¶26} For her second assignment of error, Hughes concedes that the trial court stated the necessary statutory language on the record and in the sentencing entry – the trial court made the findings required by R.C. 2919.14(C)(4) – thus consecutive sentences were not "contrary to law." But, she contends that the record does not support the imposition of consecutive terms. Specifically, she argues that an eight-year prison term would be sufficient to punish her and protect the public because she had no prior criminal record, had a drug problem which likely contributed to her behavior, and acted in conjunction with a co-defendant. She asks that we modify the sentence and order that the two sentences be served concurrently.

### A. Standard of Review – Consecutive Sentences

{¶27} We analyze Hughes's consecutive sentences under R.C. 2953.08(G)(2)(a) for compliance with R.C. 2929.14(C). *State v. Gwynne*, 158 Ohio St.3d 279, 2019-Ohio-4761, 141 N.E.3d 169, ¶ 16.

> Under that provision, a court of appeals may increase, reduce, or otherwise modify a sentence if it clearly and convincingly finds "[t]hat the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant."  Because R.C. 2953.08(G)(2)(a) specifically mentions a sentencing judge's findings made under R.C. 2929.14(C)(4) as falling within a court of appeals' review, the General Assembly plainly

intended R.C. 2953.08(G)(2)(a) to be the exclusive means of appellate review of consecutive sentences. *See State v. Vanzandt*, 142 Ohio St.3d 223, 2015-Ohio-236, 28 N.E.3d 1267, ¶ 7 ("We primarily seek to determine legislative intent from the plain language of a statute").

*Id.* at ¶ 16, 18 (reversing and remanding an appellate court decision that used the incorrect sentencing review "by reviewing Gwynne's consecutive sentences under R.C. 2929.11 and 2929.12" instead of "for compliance with R.C. 2929.14(C)(4)").

**{¶28}** We may vacate or modify a felony sentence if we clearly and convincingly find that the record does not support the trial court's findings. *State v. Layne*, 4th Dist. Adams No. 20CA1116, 2021-Ohio-255, ¶ 6. " 'This is an extremely deferential standard of review.' " *Id.* at ¶ 8, quoting *State v. Pierce*, 4th Dist. Pickaway No. 18CA4, 2018-Ohio-3943, ¶ 8. Clear and convincing evidence is proof that is more than a "mere preponderance of the evidence" but not of such certainty as "beyond a reasonable doubt," and produces in the mind a "firm belief or conviction" as to the facts sought to be established. *State v. Conant*, 4th Dist. Adams No. 20CA1108, 2020-Ohio-4319, ¶ 42.

B. Hughes's Consecutive Sentence is Supported by the Record

**{¶29}** R.C. 2929.14(C)(4) provides for the imposition of consecutive sentences:

(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the

multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶30} Here, the trial court determined that consecutive sentences were necessary to protect the public from future crime, to punish Hughes, and that consecutive sentences were not disproportionate to the seriousness of Hughes's conduct and the danger she posed to the public. Additionally, the trial court found, pursuant to R.C. 2929.14(C)(4)(b), that "at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct."

{¶31} The trial court reviewed the facts and noted that law enforcement examined the victim and discovered bruises all over his face and head and, upon removing his clothes, found both old and fresh bruising all over the victim's body. Additionally, the court reviewed audio tapes of several incidents in which Hughes beat the two-year-old victim, punished him by forcing him to stand in a freezing cold shower, and forced hot sauce down his throat. The audio tapes clearly record the sounds of the victim suffering and screaming in pain as well as Hughes's nonstop verbal berating and profanity. After describing the audio tapes, the court stated:

I've sat in the Courtroom and I've dealt with the darkest humans possible. Men killed their father, putting him in a barrel, burned him up, and spread his ashes along the road. Killed prostitutes in Portsmouth and dumped

them here. Cut a man's head [--] top of his head off. I've never, ever experienced a monster like you.

**{¶32}** The court stated that Hughes showed no remorse for her offenses, "She has absolutely no remorse." The trial court also considered the victim impact statement prepared by the victim's foster parent, which detailed the psychological struggles the victim faced and described certain conversations with and behavior of the victim that indicated that the child may have experienced additional sexual trauma. The victim continued to receive psychological therapy and was still experiencing nightmares.

**{¶33}** The trial court found that it was necessary to impose consecutive sentences on Hughes because the harm caused was so great and unusual and was necessary, "to punish the offender of the most heinous crimes that this Court has ever experienced in his life."

**{¶34}** We cannot say that the trial court's findings are clearly and convincingly unsupported by the record. The court's R.C. 2919.14(C)(4) findings are supported by the record as it is undisputed that: (1) the victim was a two-year-old child, (2) Hughes beat the victim repeatedly, on at least 10 occasions, with her hand and a belt on areas of his body that suffered open wounds, which left permanent scarring, (3) she repeatedly forced the victim to stand naked in a freezing cold shower, (4) she forced hot sauce down the victim's throat, and (5) she continued to administer this punishment, along with verbal abuse, while the victim cried, screamed, and pleaded with her.

**{¶35}** We overrule her second assignment of error.

### V. MAXIMUM SENTENCE FOR FELONIOUS ASSAULT

**{¶36}** Hughes concedes that the 36-month sentence for child endangering was an agreed, recommended sentence and she does not seek review of it. As with her

consecutive sentence, Hughes does not argue that the felonious assault sentence is contrary to law or that the trial court failed to consider the sentencing statute. Instead, she contests the maximum sentence imposed for felonious assault as unsupported by the record: "The prison sentence imposed against Ms. Hughes was excessive and not supported by the record. The court should have imposed a shorter sentence. * * * The record does not justify a maximum consecutive sentence on both counts." She argues that she should not have been sentenced to a maximum prison term for her conviction for felonious assault because the "serious physical harm" she caused to the victim "is not the most serious form of harm" because it did not involve the loss of a limb or permanent paralysis. Though Hughes does not specifically cite R.C. 2929.12(B)(2) (governing the seriousness of the physical harm), her argument about the harm not being "the most serious form" would fall under this statutory finding.

A. Standard of Review – Maximum Sentence

{¶37} We review felony sentences under the standard set forth in R.C. 2953.08(G)(2):

 The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

**{¶38}** As we outlined in our review of Hughes's consecutive sentence, we must clearly and convincingly determine that the record does not support the trial court's findings, which is a highly deferential standard of review.

### B. Hughes's Maximum Sentence

**{¶39}** The trial court stated at the sentencing hearing and in the judgment of conviction that it considered the principles and purposes of sentencing under R.C. 2929.11 and balanced the seriousness and recidivism factors of R.C. 2929.12. "[N]either R.C. 2929.11 nor 2929.12 requires a trial court to make any specific factual findings on the record." *State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381, ¶ 31.

**{¶40}** Hughes makes a broad argument that the record does not support her sentence. And, though she does not cite the statute specifically, she appears to be making an argument that the court made an improper finding concerning the seriousness of her offense under R.C. 2929.12(B)(2). Hughes does not argue that the trial court was required to make findings under R.C. 2953.08(G)(2)(a) that are not supported by the record. Based on the record before us, the trial court was not required to make any findings under R.C. 2953.08(G)(2)(a). *See State v. Lodwick*, 2018-Ohio-3710, 118 N.E.3d 948, ¶ 28 (4th Dist.) ("Further, and importantly, maximum sentences do not require specific findings."). Nor does Hughes argue that her sentence was contrary to law under R.C. 2953.08(G)(2)(b).

**{¶41}** More specifically, Hughes *does not argue* that, under R.C. 2953.08(G)(2)(a), the record does not support the sentencing court's findings under:

(1) R.C. 2929.13(B) (governing fourth and fifth-degree felonies, not applicable to Hughes);

(2) R.C. 2929.13(D) (governing first and second-degree drug offenses, not applicable to Hughes);

(3) R.C. 2929.14(B)(2)(e) (governing sentences imposed under 2929.14(B)(2)(a) or (b) for repeat violent offenders, not applicable to Hughes);

(4) R.C. 2929.14(C)(4) (governing consecutive sentences, which we addressed when we reviewed Hughes's challenge to her consecutive sentence); or

(5) R.C. 2929.20(I) (governing judicial release hearings, not applicable to Hughes).

Instead, she broadly argues that the sentence is not supported by the record. However, R.C. 2953.08(G)(2) does not give appellate courts broad authority to review sentences to determine if they are supported by the record. *State v. Jones,* 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 27 ("statements made in [*State v.*] *Marcum,* [146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231,] at ¶ 23 suggesting that it would be 'fully consistent' with R.C. 2953.08(G) for an appellate court to modify or vacate a sentence when the record does not support the sentence under R.C 2929.11 or R.C. 2929.12 were made only in passing and were not essential" and "are therefore dicta"). In *Jones, supra*, the Court recently explained:

> R.C. 2953.08(G)(2)(a) permits an appellate court to modify or vacate a sentence if it clearly and convincingly finds that "the record does not support the sentencing court's findings under" certain specified statutory provisions. But R.C. 2929.11 and 2929.12 are not among the statutory provisions listed in R.C. 2953.08(G)(2)(a). Only R.C. 2929.13(B) and (D), 2929.14(B)(2)(e) and (C)(4), and 2929.20(I) are specified.

*Id.* at ¶ 28.

**{¶42}** And, although R.C. 2953.08(G)(2)(b) permits an appellate court to modify or vacate a sentence that is "contrary to law," "an appellate court's determination that the record does not support a sentence does not equate to a determination that the sentence is 'otherwise contrary to law' as that term is used in R.C. 2953.08(G)(2)(b)." *Id.* at ¶ 32.

> When we consider the evolution of R.C. 2953.08(G), it is evident that an appellate court's conclusion that the record does not support a sentence under R.C. 2929.11 or 2929.12 is not the equivalent of a conclusion that the sentence is "otherwise contrary to law" as that term is used in R.C. 2953.08(G)(2)(b).

*Id.* at ¶ 34. Thus, based on the recent decision in *Jones, supra*, it is clear we have no authority to conduct the sentencing review Hughes seeks. She asks us to review the record and determine that the serious physical injury caused by her felonious assault offense "is not the most serious form of harm" which, in essence, is asking us to review the record and determine whether it supports the trial court's implicit finding under R.C. 2929.12(B)(2). Her argument falls outside the scope of R.C. 2953.08(G)(2) and asks us to go beyond our statutory authority. *See also State v. Loy*, 4th Dist. Washington No. 19CA21, 2021-Ohio-403, ¶ 26-30 (discussing *Jones, supra*); *State v. Abrogast,* 4th Dist. Adams No. 20CA1119, 2021-Ohio-484, ¶ 7-8 (discussing *Jones, supra*).

**{¶43}** We overrule her third assignment of error.

### VI. NO-CONTACT ORDER

**{¶44}** Hughes contends that the trial court erred when it imposed a prison sentence and a no-contact order, which is a community control sanction, because the courts have made clear that if the trial court imposes a prison term, then in may not impose a no-contact order for the same offense. *See State v. Anderson*, 143 Ohio St.3d

173, 2015-Ohio-2089, 35 N.E.3d 512.  The state concedes that the existing case law supports Hughes's argument. However, it argues that the 2017 amendment to the Ohio Constitution known as Marsy's Law expands victim rights and allows a trial court to simultaneously impose a prison term and a no-contact order.  The state provides no case law in support of its position and our research has uncovered none. Most of the cases involving the application of Marsy's Law involve the restitution or discovery provisions in Section 10(a)(A)(6) and (7).

**{¶45}** Our review of this aspect of Hughes's felony sentence is reviewed under the standard provided by R.C. 2953.08(G)(2) as discussed in our review of Hughes's maximum and consecutive sentences.

**{¶46}** On February 5, 2018, the amendment to Article I, Section 10(a) of the Ohio Constitution, known as Marsy's Law, became effective. This amendment expands the rights afforded to crime victims:

> (A) To secure for victims justice and due process throughout the criminal and juvenile justice systems, a victim shall have the following rights, which shall be protected in a manner no less vigorous than the rights afforded to the accused:
>
> (1) to be treated with fairness and respect for the victim's safety, dignity and privacy;
>
> (2) upon request, to reasonable and timely notice of all public proceedings involving the criminal offense or delinquent act against the victim, and to be present at all such proceedings;
>
> (3) to be heard in any public proceeding involving release, plea, sentencing, disposition, or parole, or in any public proceeding in which a right of the victim is implicated;
>
> (4) to reasonable protection from the accused or any person acting on behalf of the accused;

(5) upon request, to reasonable notice of any release or escape of the accused;

(6) except as authorized by section 10 of Article I of this constitution, to refuse an interview, deposition, or other discovery request made by the accused or any person acting on behalf of the accused;

(7) to full and timely restitution from the person who committed the criminal offense or delinquent act against the victim;

(8) to proceedings free from unreasonable delay and a prompt conclusion of the case;

(9) upon request, to confer with the attorney for the government; and

(10) to be informed, in writing, of all rights enumerated in this section.

(B) The victim, the attorney for the government upon request of the victim, or the victim's other lawful representative, in any proceeding involving the criminal offense or delinquent act against the victim or in which the victim's rights are implicated, may assert the rights enumerated in this section and any other right afforded to the victim by law. If the relief sought is denied, the victim or the victim's lawful representative may petition the court of appeals for the applicable district, which shall promptly consider and decide the petition. * * *

{¶47} The Ohio Constitution Article I, Section 10(a)(A)(4) gives the two-year-old victim "reasonable protection from the accused or any person acting on behalf of the accused." However, to assert that right Section 10(a)(B) requires "the victim, the attorney for the government upon the request of the victim, or the victim's other lawful representative" to assert the rights enumerated in Section (A). If the relief is denied, the victim or the victim's representative may petition the court of appeals.

{¶48} The trial court's sentencing entry orders Hughes to have no contact with the victim.  At the sentencing hearing, the trial court ordered that Hughes "shall have no contact with the victims [sic]" and asked her, "[D]o you know of any reason you would ever need to have contact with this little boy after what you've done to him in the lifetime

of recovery, that he is going to have mentally and physically?" Hughes responded, "No sir." However, there is no evidence in the record that the victim's representative asked for the no-contact order or asked the prosecutor to seek a no-contact order on the victim's behalf. The no-contact order was imposed sua sponte by the trial court as part of the sentencing order – not at the request of the victim's representative under Marsy's Law. For that reason, Marsy's Law does not apply here and we need not determine whether it provides an exception or requires a deviation from the established case law that prohibits a trial court from imposing a prison term and a community control sanction of no contact for the same felony offense. *Anderson* at ¶ 31; *State v. Conant*, 4th Dist. Adams No. 20CA1108, 2020-Ohio-4319, ¶ 41- 44.

{¶49} As we explained in *Conant, supra*:

> In *Anderson*, the Supreme Court of Ohio considered whether a trial court has the authority to impose a prison term and a no-contact order with the victim for the same felony offense. *Anderson* at ¶ 1. The Supreme Court explained that a trial court may only impose a sentence that is provided for by statute, that "Ohio courts have recognized that a no-contact order is a community-control sanction," and that the felony-sentencing statutes "reflect that the General Assembly intended prison terms and community-control sanctions to be alternative sanctions" for a felony offense. *Id.* at ¶ 12, 17, 28. The Supreme Court held that "as a general rule, when a prison term and community control are possible sentences for a particular felony offense, absent an express exception, the court must impose either a prison term or a community-control sanction or sanctions." *Id.* at ¶ 31. Therefore, "[a] trial court cannot impose a prison term and a no-contact order for the same felony offense." *Id.* at ¶ 1.

*Id.* at 43; *State v. Behrle*, 4th Dist. Adams No. 20CA1110, 2021-Ohio-1386, ¶ 49-51.

{¶50} The trial court's decision to impose a no-contact order in addition to Hughes's prison term was contrary to law. "Trial courts and intermediate courts of appeals are bound by and must follow decisions of the Ohio Supreme Court." *State v. Cox*, 4th Dist. Adams No. 02CA751, 2003-Ohio-1935, ¶ 12. Pursuant to *Anderson*, trial

courts lack authority to impose a prison term and community-control sanction for the same felony offense unless an express exception applies. Because the victim or his representative did not request the no-contact order, Marsy's Law was not triggered and provides no possible exception in this case. Accordingly, we sustain the fourth assignment of error, vacate the no-contact order, and remand for the trial court to issue a corrected sentencing entry that removes reference to that order.

## VII. REAGAN TOKES LAW

**{¶51}** Hughes contends that the trial court erred by sentencing her under the Reagan Tokes Law because it is unconstitutional. She concedes that she made no objection at the sentencing hearing and has forfeited all but plain error.

**{¶52}** The Reagan Tokes Law requires that a court imposing a prison term under R.C. 2929.14(A)(1)(a) or (2)(a) for a first or second-degree felony committed on or after March 22, 2019, impose a minimum prison term under that provision and a maximum prison term determined under R.C. 2929.144(B). R.C. 2929.144(C). There is a presumption that the offender "shall be released from service of the sentence on the expiration of the offender's minimum prison term or on the offender's presumptive earned early release date, whichever is earlier." R.C. 2967.271(B). A presumptive earned early release date is a date determined under procedures described in R.C. 2967.271(F) which allow the sentencing court to reduce the minimum prison term under certain circumstances. R.C. 2967.271(A)(2). The Ohio Department of Rehabilitation and Corrections (ODRC) may rebut the presumption if it determines at a hearing that one or more statutorily numerated factors applies. R.C. 2967.271(C). If ODRC rebuts the presumption, it may maintain the offender's incarceration after the expiration of the

minimum prison term or presumptive earned early release date for a reasonable period of time, determined and specified by ODRC, that "shall not exceed the offender's maximum prison term." R.C. 2967.271(D)(1).

**{¶53}** Hughes maintains that the Reagan Tokes Law violates the separation of powers doctrine and her due process rights. However, we find that the question of the constitutionality of the Reagan Tokes Law is not ripe for review. Hughes was sentenced to an indefinite prison term of a minimum of 11 years and a maximum of 15 years. Under the Reagan Tokes Law, there is a rebuttable presumption that Hughes will be released at the end of her minimum sentence. The ODRC may, under certain circumstances, rebut that presumption and keep Hughes incarcerated for an additional reasonable period, not to exceed her maximum prison term as sentenced by the trial court. However, Hughes has not yet served her minimum sentence. Therefore, she has not yet been subject to the application of the provisions she challenges. Because she has not yet been subject to the actions by the ODRC, the constitutional issues are not yet ripe for review.

**{¶54}** For a complete discussion of the Reagan Tokes Law and a survey of Ohio case law*, see State v. Halfhill*, 4th Dist. Meigs No. 20CA7, 2021-Ohio-177, ¶ 8–20. The question of whether the Reagan Tokes Law is ripe for review is currently pending before the Supreme Court of Ohio because of the conflict within Ohio appellate districts on the ripeness question. *See State v. Maddox*, 160 Ohio St.3d 1505, 2020-Ohio-6913, 159 N.E.3d 1150.

**{¶55}** While *Maddox, supra,* was pending, the Eighth District Court of Appeals reversed itself and determined that the Reagan Tokes Law was unconstitutional. *See*

*State v. Daniel,* 2021-Ohio-1963, __N.E.3d__ (8th Dist.) and *State v. Sealey*, 8th Dist. Cuyahoga No. 109670, 2021-Ohio-1949. In *Daniel* and *Sealey,* which were both released and journalized on June 10, 2021 and were virtually identical in analysis, the Eighth District acknowledged that it had, only months earlier, found the Reagan Tokes Law constitutional, *State v. Wilburn*, 2021-Ohio-578, 168 N.E.3d 873 (8th Dist.) and *State v. Simmons,* 2021-Ohio-939, 169 N.E.3d 728 (8th Dist.). But in *Daniel* (and *Sealey*, but for sake of simplicity we will refer only to *Daniel*), the Eighth District reversed course and disagreed with the analogy to Ohio's parole eligibility regimen and instead decided that the Reagan Tokes Law is more akin to parole revocation and reduction of good-time credit proceedings. *Id.* at ¶ 19-20, 26. *Daniel* found that the procedures identified in R.C. 2967.271(C) and (D) for rebutting the presumptive release date are constitutionally insufficient because the law, "as written, does not afford inmates a meaningful hearing, which is the fundamental element of due process required by the liberty interest the statute itself creates." *Id.* at ¶ 31-39, 40.

{¶56} More specifically, it found that the Reagan Tokes Law provisions did not provide the minimum due process requirements under *Morrissey v. Brewer*, 408 U.S. 471, 92 St.Ct. 2593, 33 L.Ed.2d 484 (1972) for parole revocation and *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) for withdrawal of good-time credits, which require the inmate receive written notice of the hearing, knowledge of the evidence to be used by the state, a chance to be heard to present evidence and confront the state's evidence, and a decision made by a neutral entity. *Daniel* at ¶ 38.

{¶57} The Eighth District expressed concern for how the Reagan Tokes Law proceedings will affect certain inmates with mental health and substance abuse issues

and further found that, "failing to provide an inmate the right to present a defense – any defense at all – flies in the face of well-established due process jurisprudence at its very core." *Id.* at ¶ 39. Notably the court acknowledged that while *Daniel* was pending, the ODRC issued procedures for the hearing process under the Reagan Tokes Law. Due to the timing of these procedures, the court would not consider their impact on its due process analysis:

> This court is aware that effective March 15, 2021, the director of the DRC issued policy number 105-PBD-15 establishing procedures for the "Additional Term Hearing Process" under the Reagan Tokes Law. That policy was not in effect at the time the parties brought this appeal, it was not in effect at the time the parties submitted their briefs, and it was not in effect at the time the parties participated in oral argument in this case. It is not before this court to consider whether the DRC policy provides due process protections that are absent from the statute. *See State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, 19 N.E.3d 888.

*Id.* at ¶ 42.

{¶58} Because our district precludes constitutional review of the Reagan Tokes Law for lack of ripeness – and because the ODRC and the Ohio Legislature may adopt additional procedures before any case ripens – we see no need to re-examine our decisions in light of *Daniel* and *Sealey*. To the contrary, the fact that the ODRC promulgated rules that will impact the Eighth District's future constitutional analysis post-*Daniel* further convinces us that our conservative approach is prudent.

{¶59} We overrule Hughes's fifth assignment of error.

## VIII. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

{¶60} Hughes contends that the trial court erred by entering judgment of conviction after a plea hearing at which she received ineffective assistance of counsel. She argues that her trial attorney's performance was deficient because he: (1) filed a

motion to withdraw Hughes's first guilty plea without having first reviewed the discovery in the case, (2) failed to argue merger at sentencing and object to the application of the Reagan Tokes Law, and (3) failed to object to the state's motion to amend the indictment.

**{¶61}** To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *State v. Allen,* 4th Dist. Pickaway No. 19CA31, 2021-Ohio-648, ¶ 21, citing *State v. Turner*, 4th Dist. Jackson No. 19CA4, 2019-Ohio-5470; *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113. "In employing this standard "we apply a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Day*, 4th Dist. Adams No. 19CA1085, 149 N.E.3d 122, 2019-Ohio-4816, ¶ 27. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

A. Motion to Withdraw Guilty Plea

**{¶62}** Hughes contends that her trial counsel's performance was deficient because he filed a motion to withdraw her guilty plea without reviewing the state's discovery. However, the record shows that she filed her motion to withdraw her guilty plea *because* she "was not given a copy or allowed to review the discovery in the case."

She argued that she "was unaware of the actual foundations of the charge and what the facts were." She contended in her motion to withdraw her guilty plea that because she had not been able to review discovery, she was "not afforded her due process rights to confront all evidence against her." It was her lack of review of the state's discovery that formed the exclusive basis for her motion to withdraw her guilty plea. Now, she claims that this same lack of discovery is the reason that her counsel was deficient for filing her motion to withdraw her guilty plea. In other words, she sought to withdraw her guilty plea because she had not reviewed the state's discovery, but now argues that she should not have filed the motion to withdraw her guilty plea because she had not reviewed the state's discovery.

**{¶63}** Regardless of whether her attorney's performance was deficient, Hughes cannot show any prejudice because the trial court allowed both Hughes and her attorney to review the state's discovery, including the two audio tapes of Hughes's conduct with the victim, and gave them an opportunity to withdraw her motion to withdraw her guilty plea before the court ruled on it. The trial court explained that it understood that a motion to withdraw a guilty plea should be liberally granted and it was not trying to discourage Hughes from withdrawing her guilty plea, but the court wanted to be certain she had an opportunity to hear the audio recordings and review the state's discovery prior to seeking a ruling on her motion to withdraw her plea. The trial court, with the state and Hughes's agreement, informed Hughes and her attorney that it would reserve its ruling until the following Monday, until all discovery had been provided to Hughes's attorney and both Hughes and her attorney had a chance to review it together.

**{¶64}** The following Monday, the trial court reiterated the agreement to reserve ruling on Hughes's motion to withdraw her plea so that she and her attorney could review the state's evidence. Hughes's attorney stated that he had received all of the state's discovery and provided it to and discussed it with Hughes. When asked if she still wanted to withdraw her guilty plea, Hughes responded, "Yes, sir." Even after giving that straightforward answer, the trial court again explained the significance of withdrawing her plea and asked her again if she understood it all and Hughes responded, "Yes, sir." Only then did the trial court grant her motion to withdraw her guilty plea.

**{¶65}** Hughes has failed to demonstrate prejudice, i.e., a reasonable probability that, but for counsel's error – assuming, but not deciding, that it was an error – the result of the proceeding would have been different. The trial court held the motion in abeyance until after Hughes and her attorney reviewed all the state's discovery and then gave her an opportunity to withdraw her motion to withdraw her guilty plea. Hughes declined to withdraw her motion. There is nothing left to speculate: the result of the proceeding was not different. Therefore, Hughes was not prejudiced by her counsel's conduct.

B. Objections to Merger and Reagan Tokes Law

**{¶66}** Next Hughes argues that her attorney was deficient for failing to raise merger at sentencing and failing to object to the constitutionality of the Reagan Tokes Law. However, in our analysis of her first and fifth assignments of error we determined that her offenses were not subject to merger and that her constitutional objection to the Reagan Tokes Law was not ripe. Any objection would have been futile. Therefore, counsel's failure to object cannot constitute ineffective assistance of counsel. *State v.*

*Black,* 4th Dist. Ross No. 12CA3327, 2013-Ohio-2105, ¶ 37 (the failure to do a futile act cannot be the basis for a claim of ineffective assistance of counsel and is not prejudicial).

### C. Objection to Amended Indictment

**{¶67}** Hughes argues that her attorney should have objected to the state's motion to amend the dates on the indictment. She speculates that the reason for the amendment was to place her conduct entirely within the Reagan Tokes Law, but she cites nothing in the record to support her speculation. At the change of plea hearing, the state described it as "a matter of housekeeping" and asked to change the dates from *April 21, 2018* through September 23, 2019 to *April 1, 2019* through September 23, 2019.  Hughes's attorney stated that he was aware of the state's proposed amendment, had discussed it with Hughes, and they had no objections. The trial court asked Hughes if her attorney had her authority not to object to the amendment and she stated, "Yes, sir."

**{¶68}** Crim.R. 7(D) provides:

> The court may at any time before, during, or after a trial amend the indictment, * * * provided no change is made in the name or identity of the crime charged. If any amendment is made to the substance of the indictment * * * the defendant is entitled to * * * a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in response to which the amendment is made * * *.

**{¶69}** The amendment did not change the name or identity of the crime charged. And, Hughes does not explain: (1) how a continuance would have been warranted under Crim.R. 7(D) had her trial attorney asked for one, (2) how a continuance would have affected her decision to enter a guilty plea, or (3) how any lack of a continuance

prejudiced her defense. Hughes has failed to demonstrate ineffective assistance of counsel or prejudice. *See State v. Tucker*, 4th Dist. Ross No. 01CA2592, 2002-Ohio-1597, *3 ("We refuse to hold that defense counsel must always *ipso facto* lodge an objection to a request to amend an indictment regardless of whether an objection is warranted.").

{¶70} Hughes has failed to establish that her counsel's performance was deficient or that she suffered any prejudice. We overrule her sixth assignment of error.

### IX. GUILTY PLEA WAS MADE KNOWINGLY AND VOLUNTARILY

{¶71} For her seventh assignment of error, Hughes contends that she did not knowingly and voluntarily plead guilty because the record shows that she was unsure if she was guilty of endangering children as set forth in count two of the indictment. She argues that the record shows that she tried to downplay her conduct and claimed that the squats were recommended by a physician and eating hot sauce was something she and the victim regularly did together. The trial court took a recess to allow Hughes to discuss matters with her attorney. Hughes asserts that she was "not comfortable admitting to the statement of facts against her * * * only after the court offers her a recess and she is further questioned by the court, does she eventually acknowledge the statement of facts" contained in the indictment.

{¶72} Hughes also contends that her guilty plea was invalid because she received ineffective assistance of counsel as argued in her sixth assignment of error. However, we have overruled her sixth assignment of error and reject this argument.

A. Standard of Review

**{¶73}** We conduct a de novo review of the record to determine whether the plea was made knowingly, intelligently, and voluntarily:

> "An appellate court determining whether a guilty plea was entered knowingly, intelligently, and voluntarily conducts a de novo review of the record to ensure that the trial court complied with the constitutional and procedural safeguards." *State v. Moore,* 4th Dist. Adams No. 13CA965, 2014–Ohio–3024, ¶ 13.

*State v. Leonhart*, 4th Dist. Washington No. 13CA38, 2014-Ohio-5601, ¶ 36.

B. Hughes's Guilty Plea Was Made Knowingly and Voluntarily

**{¶74}** A guilty plea involves a waiver of constitutional rights and the decision to enter a plea must be knowing, intelligent, and voluntary. *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 10, citing *Parke v. Raley*, 506 U.S. 20, 28-29, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992). If the plea was not made knowingly, intelligently, and voluntarily, enforcement of that plea is unconstitutional. *Id.*

**{¶75}** Ohio's Crim.R. 11 outlines the procedures that trial courts are to follow when accepting pleas. "The rule 'ensures an adequate record on review by requiring the trial court to personally inform the defendant of his rights and the consequences of his plea and determine if the plea is understandingly and voluntarily made.' " *Dangler* at ¶ 11, quoting *State v. Stone*, 43 Ohio St.2d 163, 168, 331 N.E.2d 411 (1975).

**{¶76}** "When a criminal defendant seeks to have his conviction reversed on appeal, the traditional rule is that he must establish that an error occurred in the trial-court proceedings and that he was prejudiced by that error." *Dangler* at ¶ 13; Crim.R. 52.

> Properly understood, the questions to be answered are simply: (1) has the trial court complied with the relevant provision of the rule? (2) if

the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?

*Dangler* at ¶ 17.

**{¶77}** The record shows that the trial court properly complied with Crim.R. 11 and Hughes does not contend otherwise. The record further shows that her ambiguity about her guilt on the endangering children count prior to the recess ceased after she consulted with her attorney and the proceedings resumed. Hughes clearly and unequivocally pleaded guilty to both felonious assault and endangering children.

**{¶78}** Even if Hughes believed she was innocent while pleading guilty, it would not require us to set aside her guilty plea. Persons who believe they are innocent, but conclude the evidence is incriminating enough that a jury would find them guilty, may plead guilty with an *Alford* plea. *See State v. Hughes*, 4th Dist. Highland No. 20CA2, 2021-Ohio-111. Hughes does not argue that she intended to enter an *Alford* plea and nothing in the record supports such a finding.

**{¶79}** We overrule her seventh assignment of error.

## X. CONCLUSION

**{¶80}** We overrule the first, second, third, fifth, sixth and seventh assignments of error and sustain the fourth assignment of error. We affirm the trial court's judgment in part, vacate it in part, and remand for further proceedings consistent with this opinion.

JUDGMENT AFFIRMED IN PART AND VACATED IN PART.
CAUSE REMANDED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED IN PART AND VACATED IN PART. CAUSE REMANDED. Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
     Michael D. Hess, Judge



## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**